IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASPHALT PAVING SYSTEMS, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | Civil Action |
| v. | Civil No. 13-7318 (JBS/KMW) |
| GENERAL COMBUSTION CORPORATION, et al, | **OPINION** |
| Defendants. | |

APPEARANCES:

Colin G. Bell, Esq.
HANKIN SANDMAN PALLADINO & WEINTROB, P.C.
30 South New York Avenue
Atlantic City, N.J. 08401
      Attorney for Plaintiff

Thomas M. Reardon, III, Esq.
REARDON ANDERSON LLC
55 Gilbert Street North, Suite 2204
Tinton Falls, N.J. 07701
      Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

The Defendants move for transfer of this contract case under a forum selection clause naming Orange County, Florida as the proper jurisdiction. [Docket Item 32.]  Plaintiff Asphalt Paving Systems, Inc. (hereinafter, "Plaintiff") generally alleges that it contracted with Defendants Gencor Industries, Inc. (hereinafter, "Gencor"), General Combustion Corporation (hereinafter, "General Combustion"), and Equipment Services

Group, Inc. (individually, "Equipment Services" and collectively, "Defendants") for the purposes of supplying, installing, and servicing various manufacturing equipment at Plaintiff's emulsion manufacturing facility in Zephyrhills, Florida. In performing under the contracts, however, Plaintiff alleges that Defendants failed to install the appropriate materials and failed to cure certain defects in breach of the parties' agreements and the express and implied warranties.

Following the initial filing of this action, the Clerk of Court entered default against Defendants for failure to plead or otherwise defend. Defendants, however, subsequently moved to set aside the default on the basis of improper service and sought, in the alternative, the dismissal of Plaintiff's Amended Complaint for insufficient service of process, forum non conveniens, and lack of personal jurisdiction. On September 30, 2014, the Court found Plaintiff's service of the Amended Complaint ineffective under Florida law. See Asphalt Paving Sys., Inc. v. General Combustion Corp., No. 13-7318, 2014 WL 4931294, at *4 (D.N.J. Sept. 30, 2014). Rather than dismiss Plaintiff's Amended Complaint, however, the Court quashed Plaintiff's service, and provided Plaintiff thirty (30) days within which to effectuate proper service. Id. The Court, accordingly, declined to address the Defendants' alternative arguments for dismissal. Id. at *4 n.5.

Defendants, successfully served with the Amended Complaint, now seek to transfer this action to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a) and the parties' purportedly mandatory forum selection clause. (<u>See</u> <u>generally</u> Defs.' Br. [Docket Item 32].) Plaintiff, however, disputes the existence of a valid and enforceable forum selection clause as to all Defendants, and argues that Defendants have failed to meet the heavy burden necessary to disturb Plaintiff's chosen forum. (<u>See</u> <u>generally</u> Pls.' Opp'n [Docket Item 34].)

The relatively straightforward issues presented by the pending motion are whether a valid and enforceable forum selection clause governs the parties' relationship, and whether, in light of a forum selection clause or not, the applicable considerations under 28 U.S.C. § 1404(a) favor the transfer of this action to the Middle District of Florida, Orlando Division.

For the reasons that follow, Defendants' motion will be granted, and the Court will transfer this action to the Middle District of Florida, Orlando Division.[1]

## II. BACKGROUND

### A. Factual Background

In the five-count Amended Complaint,[2] Plaintiff generally alleges that it contracted with Defendants to supply, install,

---

[1] The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

3

and service various tanks, pumps, heaters and related equipment and fixtures at Plaintiff's emulsion manufacturing facility in Zephyrhills, Florida. (Am. Compl. [Docket Item 11], ¶ 11.)

The supply contract, presented to "Mr. Travis Davis, Asphalt Paving Systems, 9021 Wire Road, Zephyrhills, FL 33540" by General Combustion on February 23, 2012, bears General Combustion's logo in its introductory sections, but identifies Gencor on each page adjacent to Plaintiff's acceptance. (Reardon Cert., Ex. B.) The contract then summarizes the equipment and installation to be provided by General Combustion and/or Gencor, in addition to the "Set up and Service" to be provided by Equipment Services.[3] (Id. at 1 (setting forth a summary of items included within the contract and writing

---

[2] Plaintiff filed the initial Complaint in this action on December 6, 2013 [Docket Item 1], followed by an Amended Complaint on February 28, 2014. [Docket Item 11.] On December 13, 2013, however, General Combustion filed a related action in Orange County, Florida, alleging that Plaintiff breached the supply and service agreements by "fail[ing] to pay the monies due." (Reardon Dec., Ex. D at ¶ 6.)

[3] Plaintiff contemporaneously received a service contract with Defendant Equipment Services Group, Inc., concerning the service and maintenance of the equipment and fixtures supplied and installed by General Combustion. (Am. Compl. at ¶ 13; see also Reardon Dec., Ex. B.)) Though the parties appeared to have performed under the service agreement, the parties did not execute the service agreement, presumably, because the supply agreement incorporated and required payment for the services rendered under the service agreement. (See Defs.' Reply at 3 (arguing that "the Service Agreement was not signed by any of the parties because it was incorporated into the total contract").) As stated below, the Court finds the service agreement expressly and sufficiently incorporated within the overall supply agreement.

4

instructions for payment).) The contract also directs that payment for all of Defendants' services be remitted to Gencor, and further provides that such agreement be governed by Gencor's "'Standard Terms and Conditions of Sale'" (hereinafter, the "Standard Terms").  (Am. Compl. at ¶ 12.)  The Standard Terms, in turn, provide that the agreement "and all questions regarding the performance of the parties [thereunder] shall be controlled by the laws of the State of Florida, and jurisdiction of any dispute shall be in Orange County, Florida."  (Reardon Cert., Ex. B at 17.)

General Combustion "substantially completed its work" in connection with the contract "on or about October 1, 2012." (Am. Compl. at ¶ 22.)  Plaintiff alleges, however, that General Combustion failed to perform the work "in a workmanlike manner and in accordance with the contract specifications."  (Id. at ¶ 23.)  Plaintiff specifically asserts, "without limitation," that Defendants:

> A. Failed to install the proper stainless steel cables in certain emulsion tanks which resulted in the same becoming tangled and breaking within the tanks' mixing elements[;]
> B. Failed to install the appropriate gate valves in the emulsion tanks, which has caused dangerous, superheated oil to burst from the piping[;]
> C. Failed to correct leaks that have caused the loss of transfer oil, resulting in damage to various pumps that require proper oil lubrication to function properly[; and]
> D. Failed to install function electric magnatrol valves on emulsion tanks.

5

(Id. at ¶¶ 24(A)-(D).)  Plaintiff further alleges that Defendants have failed to cure such defects, despite Plaintiff's repeated demands, causing Plaintiff to incur substantial "out-of-pocket repair costs," and "consequential damages" as a result of Defendants' "malfunctioning and improperly installed" equipment.  (Id. at ¶ 26.)

Plaintiff, accordingly, alleges that Defendants breached the supply and service contracts and the express and implied warranties imbedded within such agreements, and have been unjustly enriched through their refusal to perform required (and presumably paid for) repairs.  (Id. at ¶¶ 27-37.)  Moreover, because Gencor, General Combustion, and Equipment Services "hold themselves out" and "advertise" as the collective "'Gencor Family of Companies,'" Plaintiff alleges that Defendants' "interrelated nature" render the entities jointly and severally liable as alter-egos. (Id. at ¶¶ 9, 14, 21, 38-41.)

### B. Parties' Arguments

In support of the pending motion, Defendants insist that the parties' "mandatory" and "reasonable" forum selection clause requires that this action be transferred to the Middle District of Florida, a court within the parties' agreed-upon forum. (Defs.' Br. at 8-13.)  In the alternative, and in addition, Defendants submit that the Section 1404(a) factors overwhelmingly favor transfer—regardless of whether the Court

credits the forum selection clause, in light of the parties' undisputed presence in Florida, in addition to the fact that contractual negotiation and performance in Florida comprises the core predicate for this litigation. (Id. at 13-14; see also Defs.' Reply at 2-4.)

Plaintiff, however, disputes the presence of any mandatory forum selection clause in this instance, because the service contract between Plaintiff and Equipment Services contains no such express provision, and because the supply contract purportedly fails to envelop "non-signatory" Gencor. (Pls.' Opp'n at 5.) Rather, Plaintiff argues that such clause applies solely to General Combustion. (Id.) Plaintiff therefore insists that the pending motion must be evaluated solely in accordance with the Section 1404(a) factors, and asserts that, under an evaluation of such factors, Defendants fail to meet "the heavy burden" required to transfer this litigation. (Id. at 14.)

### III. STANDARD OF REVIEW

28 U.S.C. § 1404(a) generally provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is well settled that a motion to transfer under 28 U.S.C. § 1404(a) constitutes the appropriate procedural mechanism to

enforce a forum selection clause. See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx., ___ U.S. ____, 134 S.Ct. 568, 580 (2013). Here, however, the Court must first examine the enforceability of the forum selection clause, prior to engaging in a transfer analysis.

**IV. DISCUSSION**

**A. The Standard Terms Sets Forth a Valid, Enforceable, and Mandatory Forum Selection Clause that Governs the Parties' Contractual Relationships**

    **1. Gencor's Standard Terms Governs the Supply and Service Contract**

At the outset, the Court rejects Plaintiff's assertion that the forum selection provision in the Standard Terms has no application to either Gencor or Equipment Services. (See Pl.'s Opp'n at 5.) To the contrary, the supply contract executed by Plaintiff clearly incorporates the performance of all Defendants through its specific identification of, and reference to, the services to be provided by Gencor and Equipment Services, and its direction that payment for <u>all</u> services be remitted to Gencor. (See, e.g., Reardon Dec., Ex. B at 13-17 (providing the litany of rights and responsibilities by and between Plaintiff and Genco).) Moreover, the supply contract identified Gencor on each page, and included Gencor's Standard Terms as part of the agreement's sequentially-numbered pages. (See id. at 13-17.) The agreement similarly identified, with specificity, Equipment Services, and likewise included the service agreement as one of

8

its attachments. (See id. at 1 (referencing, with specificity, the service agreement).) Despite Plaintiff's undisputed receipt of the service agreement and Equipment Services undisputed provision of services (even if defective), however, the parties only executed the supply contract, which further infers the singular nature of the overall contractual agreement. (See Defs.' Reply at 2-3.) Indeed, the Court finds that these circumstances amply reflect, and are entirely consistent with, the parties' intention that the documents and all terms be read as part of the same overall agreement. See Phx. Motor Co. v. Desert Diamond Players Club, Inc., 144 So.3d 694, 697-698 (Fla. Dist. Ct. App. 2014) (generally noting that, under Florida law, an agreement and collateral documents form part of the same contract, and are sufficiently incorporated, where executed as part of the same transaction, and where the primary document contemplates the execution of additional documents); Nova Corp. v. Joseph Stadelmann Elec. Contractors, Inc., No. 07-1104, 2008 WL 746672, at *3 (D.N.J. Mar. 18, 2008) ("'Incorporation by reference [under New Jersey law] is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'") (citations omitted).

9

In addition, the Court notes that Plaintiff specifically predicates its Amended Complaint and opposition to the pending motion upon Defendants' unified existence and performance under the supply and service agreements. (See generally Am. Compl.) Indeed, Plaintiff's Amended Complaint expressly acknowledges that Defendants operated as a collective "Family of Companies" (id. at ¶ 9), that Defendants "each accepted or retained payment" from Plaintiff for work "performed under the Supply and/or Service Contracts by another" defendant (id. at ¶ 40), and further allege that Gencor "breached the Supply Contract and the Service Contract" with Plaintiff. (Id. at ¶ 28.) Plaintiff similarly concedes in opposition to the pending motion that the supply contract "notes" that it is Gencor's proposal, "directs payments to be made" to Gencor, includes the Standard Terms, granted Gencor "a security interest in the equipment provided," and that Gencor issued the invoices "for work performed under both the Supply Contract and Service Contract." (Pl's Opp'n at 3-4 (citations omitted).) Given these circumstances, Plaintiff cannot be heard to complain that it operated under any misunderstanding concerning with whom it engaged in business, or to whom Gencor's Standard Terms applied. (See generally Pl.'s Opp'n at 5.) Rather, the Court finds the Standard Terms, including the forum selection clause, applicable to all parties,

and therefore turns to issues concerning such provision's enforcement.

### 2. The Forum Selection Clause is Valid, Enforceable, and Mandatory

Though forum selection clauses have not been historically favored by American courts, the Supreme Court in M/S Bremen v. Zapata OffShore Co., 407 U.S. 1, 10 (1972), held such clauses to be presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances.  See also Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85 (3d Cir. 2006) (citations omitted) ("Forum selection clauses are entitled to great weight and are presumptively valid.").  Consequently, in order to avoid the application of a valid forum selection clause, the resisting party must establish "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable." Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983), overruled on other grounds by, Lauro Lines v. Chasser, 490 U.S. 495 (1989); see also MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003) (same).  The party opposing

11

enforcement of a forum selection clause, however, bears a "heavy burden of proof." M/S Bremen, 407 U.S. at 17, 19; see also MoneyGram Payment Sys., 65 Fed. App'x at 848 (same).

Here, Plaintiff does not argue that the forum selection clause resulted from overreaching or fraud, nor that enforcement of the clause would be contrary to public policy or result in litigation in a location that would be so inconvenient as to be unreasonable. See Coastal Steel Corp., 709 F.2d at 202. Rather, Plaintiff relies entirely upon the assertion that the forum selection clause merely constitutes a permissive consent to Florida jurisdiction, rather than a mandatory filing requirement. (See Pl.'s Opp'n at 6-7.) The Court therefore turns to the nature of the disputed forum selection clause in this instance.

A mandatory forum selection "'identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship.'" Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., 440 F. Supp. 2d 357, 363 n.1 (D.N.J. 2006) (quoting S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609 (M.D.N.C. 1997)); see also Dawes v. Publish Am. LLP, 563 F. App'x 117, 118 (3d Cir. 2014) (same). A permissive forum selection clause, by contrast, "'merely specifies the court empowered to hear litigation" and, in effect, "'allows parties to air any dispute in that court

without requiring them to do so.'" Id. at 363 n.2 (quoting S & D Coffee, Inc., 995 F. Supp. at 609).

Moreover, despite Plaintiff's assertion that the forum selection clause fails to be mandatory due to its lack of "'words of exclusivity,'" the Court notes that, in this Circuit, a forum selection clause need not "contain language such as 'exclusive' or 'sole'" in order to be mandatory.[4] Feldman v. Google, Inc., 513 F. Supp. 2d 229, 246 (E.D. Pa. 2007) (citing Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85-86 (3d Cir. 2006)). Rather, inclusion of the word "shall" sufficiently evinces a forum selection clause's mandatory nature. See Aubrey, 189 F. App'x at 85-86 (noting that "shall" suffices, without more, to connote mandatory intent); Samuels v. Medytox Solutions, Inc., 2014 WL 4441943, at *7 (D.N.J. Sept. 8, 2014) (finding that "use of the word 'shall' renders the forum selection clause mandatory and not permissive"); Frazetta v. Underwood Books, 2009 WL 959485, at *4 (collecting cases and noting that, the "'use of the word 'shall' generally indicates a

---

[4] The Court therefore rejects Plaintiff's reliance upon Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1987). (See Pl.'s Opp'n at 6-7 (arguing that the Court should follow the Ninth Circuit's requirement that mandatory forum selection clauses contain words of exclusivity). Rather, for the reasons stated herein, the weight of authority in this Circuit requires no such exclusivity in mandatory forum selection provisions. See, e.g., Aubrey, 189 F. App'x at 85-86 (finding "shall" a clear indication of mandatory intent).

13

mandatory intent unless a convincing argument to the contrary is made.'") (citations omitted).

The disputed forum selection clause in this instance specifically provides that, "the instrument and all questions regarding the performance of the parties [thereunder] shall be controlled by the laws of the State of Florida, and jurisdiction of any dispute shall be in Orange County, Florida." (Reardon Dec., Ex. B at 17 (emphases added).) Thus, although the disputed provision does not specifically identify a particular court, it does specify a particular county within a state, and provides that any dispute be filed in a court within such geographical territory. These attributes amply suffice to create a mandatory forum selection clause. See Frazetta v. Underwood Books, No. 08-0516, 2009 WL 959485, at *3 (M.D. Pa. Apr. 6, 2009) (finding the specific identification of a state, rather than a court, sufficient to create a mandatory). Indeed, the Court finds that such language admits of no other result than that the courts of Orange County, Florida constitute the exclusive forum for any litigation arising out of the parties' contractual relationship.[5] Consequently, the Court finds the

---

[5] The Middle District of Florida sits within Orange County, Florida, and Plaintiff does not argue that the phrase "a court in Orange County, Florida" should be construed narrowly to include only state, rather than federal, forums in such county. (Reardon Dec., Ex. B at 17.) Because the forum selection provision provides for jurisdiction in "a court in Orange

14

forum selection clause valid, mandatory, and enforceable. Compare Wall St. Aubrey Golf, LLC, 189 F. App'x at 85 (finding the following clause unambiguously mandatory: "This Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania"), with Radian Guaranty Inc. v. Bolen, 18 F. Supp. 3d 635, 650 (E.D. Pa. 2014) (finding permissive a forum selection clause providing that, "any legal proceeding arising out of this paragraph may be brought in the United States District Court for the Eastern District of Pennsylvania") (emphasis in original).

Nevertheless, in order to determine whether transfer is warranted, the Court must still engage in a modified Section 1404(a) analysis.

### B. The Applicable Section 1404(a) Considerations Militate in Favor of Transfer

In a typical case not involving a forum-selection clause, the district court must, in considering a Section 1404(a) motion,[6] weigh the relevant private and public-interest factors and determine whether a transfer would serve "the convenience of

---

County, Florida," rather than "the court of Orange County, Florida" (or some similar variant), the Court finds that the provision only imposes a geographical limitation on the court within which to file any action arising out of the parties' agreements, and is therefore flexible enough to include either federal or state forums in Orange County, Florida.
[6] In diversity cases, federal law governs the effect to be given contractual forum selection clauses. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

parties and witnesses" and otherwise promote "the interest of justice." 28 U.S.C. § 1404(a).[7] In <u>Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tx.</u>, ___ U.S. ____, 134 S.Ct 568, 582 (2013), however, the Supreme Court directed that an agreed-upon mandatory forum-selection clause, as here, "'be given controlling weight in all but the most exceptional cases," requiring federal district courts, in turn, "to adjust their usual § 1404(a) analysis in three ways." <u>Id.</u> at 581.

"First, the plaintiff's choice of forum merits no weight," and instead, the plaintiff "bears the burden of establishing that transfer" to the agreed-upon forum would be "unwarranted." <u>Id.</u> Second, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Id.</u> A court must, accordingly, "deem the private-interest factors[8] to weigh entirely in favor of the preselected

---

[7] In connection with a Section 1404(a) motion, the Court must determine, as a threshold issue, whether the proposed alternative forum (here, Florida) constitutes a venue whether the action could originally have been brought. Here, however, there is no dispute that Defendants reside in Florida and that a substantial part of the disputed facts in this litigation occurred in Florida. Defendants further concede that courts within the State of Florida possess personal jurisdiction over them. For all of these reasons, the Court finds that this action could originally have been brought in Florida. <u>See</u> 28 U.S.C. § 1391(a).

[8] Factors related to the parties' private interests include: "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of

16

forum." Id. at 582. For, "'[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum . . . was clearly foreseeable at the time of contracting.'" Id. (alterations in original). Third, when a party "flouts" its contractual obligation under the forum selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. (citing Piper Aircraft Co., 454 U.S. at 241).

The presence of a valid, mandatory forum selection clause in this instance therefore radically alters the analytical framework applicable to the pending motion. Indeed, under Atlantic Marine Construction Co., the Court need only consider the public-interest factors. However, because such "factors will rarely defeat a transfer motion," the "forum-selection clause should control except in unusual cases." Id.

Nevertheless, the Court notes that, the public-interest factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized

---

obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Atl. Marine Constr. Co., 134 S.Ct. at 581 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n. 6 (1981) (internal quotation marks omitted)).

17

controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" Atl. Marine Constr. Co., 134 S.Ct. at 581 n.6 (alterations in original) (citation and internal quotation marks omitted). In addition, courts may consider "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive;" and "the public policies of the fora." Jumara, 55 F.3d at 879-80 (citations omitted).

Here, the Court need not belabor any of the relevant public-interest factors, because none tip the scales sufficiently in Plaintiff's favor. Indeed, Plaintiff does not argue that any public-interest factor heavily disfavors transfer, nor that any localized policy or interest supports the retention of this action in New Jersey. (See generally Pl.'s Opp'n at 11-13.) Rather, Plaintiff concedes that the public-interest factors are either in equipoise, or favor transfer, given "the construction project at issue took place in Florida." (Pl.'s Opp'n at 12.) Defendants, by contrast, assert that the public-interest factors heavily favor transfer, in light of the Florida-centric nature of this litigation, and because any judgment would purportedly be enforceable only in Florida. (Defs.' Reply at 4-5.)

Conduct—and defective performance—in Florida forms the fabric of this litigation, thereby rendering this action predominantly, if not entirely, localized to Florida. In addition, because all of the disputed facts in this instance occurred in Florida, efficiencies necessarily flow from conducting the trial of this action in a localized forum.[9] Nor does the Court find that any relative court congestion cautions against transfer. Rather, although a consideration in a Section 1404(a) motion, the Court finds the "'relative congestion of the respective courts' dockets'" of minimal importance in the

---

[9] Moreover, the result would remain unchanged even if the Court accepted as true Plaintiff's assertion that Defendants sought payment from Plaintiff in New Jersey, and directed its negotiation of the underlying contracts to Plaintiff's New Jersey headquarters. (See Pl.'s Opp'n at 12-13.) Despite Plaintiff's assertion, the disputed facts in this litigation primarily concern the quality of Defendants' supply, installation, and service of various equipment in Florida, not the location from which Defendants sought payment, nor the negotiations of the underlying contract. (See generally Am. Compl. at ¶¶ 8-26 (generally delineating Defendants' various alleged installation failures at Plaintiff's facility in Florida).) For the same reasons, the Court concludes that the result would remain unchanged, even if the Court considered the private-interest factors. Indeed, as stated above, this action concerns services provided in Florida, will likely require inspection of the Florida facility, in addition to testimony from individuals employed in such facility during the relevant period. Moreover, the parties are presently engaged in ongoing litigation in Florida concerning many of the disputed facts in this litigation. (See Reardon Cert. at ¶¶ 15-19; see also Reardon Dec., Exs. D, E, F, G, H.) Given the situs of the disputed facts in this action (most of which rest in Florida), coupled with the pendency of related litigation in Florida, the Court finds the private-interest factors similarly favor transfer of this action.

19

overall transfer inquiry.  Yocham, 565 F. Supp. 2d at 560 (quoting Clark, 255 F. Supp. 2d at 338 (citing cases for the proposition that "calendar congestion" does not constitute "a factor of great importance" in connection with a transfer motion)).  Consequently, under the facts presented, the Court finds transfer of this action to be warranted under 28 U.S.C. § 1404(a).

## V.   CONCLUSION

For all of these reasons, Defendants' motion will be granted, and the Court will transfer this action to the Middle District of Florida, Orlando Division.  An accompanying Order will be entered.


 January 13, 2015                     s/ Jerome B. Simandle
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge